| | |
|---|---|
| **JOHN SALAZAR,** | 1:18-cv-00847-LJO-EPG |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER RE DEFENDANT CARGILL MEAT SOLUTIONS CORPORATION'S MOTION FOR SUMMARY JUDGMENT (ECF No. 17)** |
| v. | |
| **CARGILL MEAT SOLUTIONS CORP. aka CARGILL BEEF SOLUTIONS CORP.; and DOES 1–100,** | |
| Defendants. | |

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

## I. INTRODUCTION

Plaintiff John Salazar raises discrimination and retaliation claims under the California Fair Employment Housing Act and a claim for wrongful termination in violation of public policy under California Labor Code § 1102.5. Defendant Cargill Meat Solutions Corporation filed a motion for summary judgment or, in the alternative, summary adjudication. The Court has thoroughly reviewed the facts and evidence in the record in light of applicable authorities and only discusses here the facts and arguments that are material and dispositive. Based on the Court's review, Defendant's motion for summary judgment is GRANTED in part, and DENIED in part.

## II. FACTUAL BACKGROUND

John Salazar ("Mr. Salazar" or Plaintiff") was the Harvest Superintendent at Cargill Meat Solutions Corporation ("Cargill"). McFarland Decl. ¶ 2, Ex. A, Salazar Dep. 64:4–15, Jan. 23, 2019 (ECF No. 23-1); Salazar Decl. ¶ 11, Ex. 1, at 6 (ECF No. 28-3). Rosalinda Lee ("Ms. Lee") worked as the general foreman at Cargill from 2007 to 2013. Lee Decl. ¶ 4 (ECF No. 28-5). The record indicates

1

that workplace issues arose between Ms. Lee and another Cargill manager, Rudy Steiner ("Mr. Steiner"). *See, e.g.*, Salazar Dep. 85:1–15 (ECF No. 28-6); (ECF No. 28-1 ¶ 8). According to Mr. Salazar, Mr. Steiner demoted Ms. Lee from a general foreman to a supervisor. Salazar Dep. 85:16–17 (ECF No. 28-6).

Between August 2013 to November 2013, and in June 2014, the record shows that Cargill investigated complaints relating to Mr. Salazar and Ms. Lee. *See, e.g.*, Mott Decl. ¶ 8, Ex. E (ECF No. 20-5); *Id.* ¶ 8, Ex. F (ECF No. 20-6); *Id.* ¶ 9, Ex. G, at 2–3 (ECF No. 20-7); *Id.* ¶ 10, Ex. H at 1 (ECF No. 20-8); ECF No. 28-1.

In January 2014,[1] Cargill issued Mr. Salazar a "Final Written Warning" for unfair and unequal treatment of employees. The notice specifically states: "Ensure supervisors are the ones to issue discipline and [are] involved in discipline discussions and termination discussions. John [Salazar] does not need to be involved. If Rosalinda . . . needs help, she needs to request the help from Human Resources or the department manager, Rudy Steiner. John [Salazar] is not to assist." Mott Decl. ¶ 22, Ex. J at 3 (ECF No. 20-10).

In approximately 2013 or 2014, Jose Manuel Espinoza, another Cargill supervisor who worked under Mr. Salazar, contends that he "witnessed Rudy Steiner . . . refer to Rosalinda Lee as a monkey" and tell her "you're a woman, you don't know what you are doing." Espinoza Decl. ¶ 7. Mr. Espinoza "heard Rudy Steiner tell Rosalinda Lee [that] women are dumb to lead people on the floor[.] They do not know what they are doing." *Id.*

---

[1] Exhibit J shows that the Performance Correction Notice was presented to John Salazar on January 28, 2013. In his declaration, Shawn Mott states that Exhibit J is a true and correct copy of the warning Plaintiff received in January 2014. Mott Decl. ¶ 22 & Ex. J (ECF Nos. 20, 20-10). Plaintiff did not dispute this fact. He only objected on relevance grounds. The last page of Exhibit J shows that all signatures were executed on February 10, 2014. Based on the parties' undisputed facts, the Court will accept that this notice was presented in January 2014 for purposes of this motion.

The record is unclear as to when the following occurred. Mr. Salazar contends that he witnessed "Rudy Steiner harass Rosalinda Lee for being a woman" and that Mr. Steiner retaliated against Mr. Salazar for raising the alleged harassment with Cargill General Manager Jon Nash and John Neiman. Salazar Dep. 34:4–10 (ECF No. 23-1). Mr. Salazar also testified that Mr. Steiner retaliated against him, stating during meetings "all the time that [Mr. Salazar] was too old for the job." *Id.* at 34:23–25. According to Mr. Salazar's deposition testimony,[2] Mr. Steiner said that he needed someone younger "a couple hundred times . . . [m]ore or less." *Id.* at 45:20–22.

On February 10, 2014, Ms. Lee filed a Department of Fair Employment and Housing ("DFEH") charge against Cargill, claiming gender-based discrimination and retaliation. Mott Decl. ¶ 23, Ex. K, at 2. Rudy Steiner left Cargill in February 2014. ECF No. 28-1 ¶ 29.

From April 2014 to October 2014, Ron Logan served as Mr. Salazar's supervisor. *Id.* At some point during Mr. Espinoza's employment, Mr. Espinoza contends "Ron Logan told [him] that the corporate office of Cargill wanted to get rid of John Salazar." Espinoza Decl. ¶ 6. Beginning in November 2014, Lawrence Romero became John Salazar's direct supervisor. *Id.* ¶ 30.

On December 22, 2014, Mr. Salazar spoke with a DFEH investigator at Cargill in support of Ms. Lee's gender discrimination and harassment claims. Salazar Decl. ¶ 6; Espinoza Decl. ¶ 7; Lee Decl. ¶ 7. Cargill's lawyer and Keith Mohander (another Cargill employee) were present during Mr. Salazar's DFEH interview. Salazar Decl. ¶ 6. It is disputed whether Mr. Romero knew that the DFEH interviewed Mr. Salazar regarding Ms. Lee's claims. *See* Espinoza Decl. ¶ 9 (ECF No. 28-4); Romero Decl. ¶¶ 5, 7, 9–10 (ECF No. 22). According to Mr. Espinoza, Mr. Romero told him that a third party was interviewing John Salazar regarding Ms. Lee's claims.[3] Espinoza Decl. ¶ 9.

---

[2] In his opposition to the Defendant's summary judgment motion, Mr. Salazar only refers to Mr. Romero's alleged age-based statements, not Mr. Steiner's. Salazar Dep. 45:20–22 (ECF No. 23-1).

[3] Mr. Romero denies that he knew about Ms. Lee's DFEH complaint at the time and claims that Cargill purposely shielded

Mr. Salazar argues that he suffered many instances of negative conduct after the DFEH interview. Mr. Salazar asserts that Lawrence Romero took over the daily morning meetings. Salazar Decl. ¶ 9; Espinoza Decl. ¶ 12; Lee Decl. ¶ 8. According to Mr. Salazar, Mr. Salazar previously ran the morning meetings with the harvest manager, the harvest superintendent, and the supervisors. Salazar Decl. ¶ 8; Espinoza Decl. ¶¶ 10–11; Lee Decl. ¶ 6. Sometime "before the holidays," Mr. Salazar testified that he first complained to Mr. Romero about having "no support" from him, explaining that Mr. Romero was "not really giving [him] any information," and was "taking over [his] meetings."[4] Salazar Dep. 13:1–5, 14:14–15:6.

In addition, Mr. Salazar, Mr. Espinoza, and Ms. Lee contend that Mr. Romero stated "two to three times a week that he needed to bring in young blood to run the kill floor" and that Mr. Salazar was old.[5] Salazar Decl. ¶ 9; Espinoza Decl. ¶ 12; Lee Decl. ¶ 11. Mr. Salazar contends that Mr. Romero instructed Mr. Salazar to train Jimmy Malone, who was in his early thirties, to take over Mr. Salazar's job because he was "getting too old." Salazar Dep. 66:23–25. Mr. Espinoza also stated in his declaration that "Cargill and Lawrence Romero were having another employee, Jimmy Malone, trained to take over John Salazar's job."[6] Espinoza Decl. ¶ 12. Mr. Romero denies these statements. Romero Decl. ¶ 15.

Furthermore, as Harvest Superintendent, Mr. Salazar previously gave all supervisors their assignments and direction. Salazar Decl. ¶ 9; Espinoza Decl. ¶ 12; Lee Decl. ¶ 11. After the DFEH

---

him from learning that information because he "had no need to know about it." Romero Decl. ¶¶ 5, 7, 9–10.

[4] This is a disputed fact. In his declaration, Mr. Romero states that Mr. Salazar never complained to him about anything. Romero Decl. ¶ 7.

[5] Mr. Salazar was sixty years old at the time.

[6] According to the present record, Jimmy Malone never replaced Mr. Salazar after Mr. Salazar left Cargill. Salazar Dep. 146:8–147:10.

4

interviewed John Salazar, Lawrence Romero bypassed John Salazar and gave directions directly to the floor supervisors on how to complete their jobs. Salazar Decl. ¶ 9; Espinoza Decl. ¶ 12; Lee Decl. ¶ 12. There was also a weekly managers' meeting at Cargill. After the DFEH interviewed Mr. Salazar, Mr. Salazar contends that Mr. Romero excluded him from those meetings. Salazar Decl. ¶ 9; Lee Decl. ¶ 13.

Moreover, Mr. Romero overruled Mr. Salazar's decisions to discipline an employee. Salazar Decl. ¶ 9; Espinoza Decl. ¶ 12; Lee Decl. ¶ 14. Mr. Salazar planned on having that employee terminated, but once Mr. Romero became involved, he overrode Mr. Salazar's decision. *Id.* Afterwards, Mr. Espinoza stated that he "saw the hourly employees on the kill floor lose respect for John Salazar. They would tell me that John Salazar lost his authority. Some of the employees laughed at John Salazar." Espinoza Decl. ¶ 12.

Cargill does not appear to contest Mr. Salazar's assertion that Mr. Romero told Mr. Salazar that "if he supported Rosalinda Lee that he was going to be fired."[7] "Lawrence Romero told John Salazar that Brian Dierksen, a Vice President at Cargill, had asked Lawrence Romero, when he was going to fire John Salazar." Salazar Dep. 210:2–211:24 (ECF No. 28-6); Salazar Decl. ¶¶ 7, 10 (ECF No. 28-3).[8] Mr. Salazar testified that "[i]n a roundabout way. [H]e[9] did say . . . if I had said anything . . . I was going to get fired pretty much." Salazar Dep. 210:20–211:24. When asked what Lawrence Romero said, Salazar responded, "if I did say anything or I did support that I was going to get fired." [10] *Id.*

---

[7] Defendant did not dispute this in its opposition to the Plaintiff's SUMF 29. ECF No. 32. However, Lawrence Romero "vehemently denies" allegations that he mistreated Mr. Salazar and retaliated against him because of his support for Rosalinda Lee. He states that he was unaware that Mr. Salazar supported Ms. Lee in any discrimination or harassment claim.

[8] Defendant does not formally respond to Plaintiff's SUMF 29. ECF No. 32. But, Mr. Romero denies this allegation. Given that this is Defendant's burden on its motion for summary judgment, the Court accepts Plaintiff's evidence as true for purposes of this motion.

[9] Based on the excerpt of this testimony, it is unclear whether the "he" refers to Mr. Romero in this statement.

[10] Cargill's counsel asked Mr. Salazar whether anyone had expressly threatened to fire Mr. Salazar if he supported Rosalinda

5

Around December 2014 or January 2015, Mr. Salazar complained to Jon Nash about Mr. Dierksen's allegedly questioning Mr. Romero about firing Mr. Salazar. Mr. Salazar also complained to Nash about his belief that the company retaliated against him and was forcing Mr. Salazar to resign based on his statements to the DFEH. Salazar Dep. 14:7–17:3.

Ms. Lee contends that, sometime in January 2015, Mr. Romero told her that he was upset with Mr. Salazar for supporting her when the DFEH interviewed Mr. Salazar. Lee Decl. ¶ 16. Ms. Lee further contends that Mr. Romero told her that Mr. Salazar never should have testified for her. *Id.*[11]

On February 26, 2015, Mr. Salazar offered his resignation letter and two weeks' notice. Salazar Decl. ¶ 11, Ex. 1. Because Plaintiff planned to work for a competitor, Cargill paid him for the two-week notice period instead of having Plaintiff work at the plant for the next two weeks. Mott Decl. ¶ 31, Ex. M (ECF No. 20-13). Thus, February 26, 2015 was Mr. Salazar's last day at Cargill. *Id.*

On November 20, 2015, Plaintiff filed a DFEH charge alleging retaliation. Mott Decl. ¶ 34, Ex. O (ECF No. 20-15). Mr. Salazar's DFEH complaint states:

> 1. I, John Salazar, allege that I was subjected to Retaliation by respondent, Cargill . . . due to one or more [FEHA] protected bases: Association with a member of a protected class.
>
> 2. I was constructively terminated. The most recent harm occurred on or around January 22, 2015.

---

Lee. Salazar Dep. 141:16–23 (ECF No. 23-1). Mr. Salazar responded, "No. They didn't say it, but Moldenauer was showing it. . . [B]y the way he was looking at me, by his body language . . . like in other words, don't say nothing. Don't say nothing. Nobody said nothing, but it's just you get the vibes, like real strong vibes, like don't say nothing." *See also id.* 66:1–6 (ECF No. 23-1) (A: "Well, he didn't tell me, but by him saying that Brian Dirksen asked 'when are you going to fire Salazar?' to me was – my days were counted, so I was forced to resign." Q: "So he didn't tell you you were going to be fired?" A: "Well, no, but I mean, by him saying that, to me that's what he meant.").

[11] Again, Mr. Romero "vehemently" denies this allegation. Romero Decl. ¶ 14. But, for purposes of this motion, the Court must accept the version of disputed facts that best serves Plaintiff.

> 3. My belief is based on the following: I appeared at a hearing[12] when I complained about discrimination of a coworker. After the hearing many coworkers were interviewed regarding my involvement in the case. I was then harassed by Lawrence Romero and felt targeted. I feel I was harassed so that I would quit my job. I was constructively terminated due to the harassment.

*Id.* at 5. On the standard EEOC cover sheet, Mr. Salazar only selected "retaliation" as the basis for discrimination. *Id.* at 8. He did not check any boxes for "Age Discrimination in Employment Act of 1967," "Age," or "Disability." The dates of the alleged violation are listed as February 14, 2014 to January 22, 2015. *Id.*

Mr. Salazar testified that he was not making any disability discrimination claims. Salazar Dep. 44:19–45:5. Mr. Salazar further testified that the bases for his age discrimination claim are Rudy Steiner's and Lawrence Romero's comments stating that Mr. Salazar "was too old for the job." *Id.* at 45:10–17. Mr. Salazar clarifies in his deposition and responses to Defendants' Special Interrogatories that his discrimination claim is based on his association with only Rosalinda Lee and Cargill's age-based comments. *See id.* at 78:9–13 (ECF No. 23-1); Pl.'s Resps. To Def.'s Special Interrog. No. 9 (ECF No.23-3 at 8) (identifying Rosalinda Lee as person with whom Plaintiff associated that he contends led to Cargill's discrimination).

Mr. Salazar filed a complaint on February 17, 2017 in the Fresno County Superior Court. ECF No. 1-1 at 2. On May 3, 2018, Mr. Salazar filed his First Amended Complaint against Cargill alleging: (1) FEHA discrimination for association with a member of a protected class; (2) FEHA disability discrimination; (3) FEHA retaliation; and (4) wrongful termination in violation of public policy. ECF No. 1-1 at 17–29. Cargill removed the action to this Court on June 20, 2018. ECF No. 1 at 1. Mr. Salazar also seeks punitive damages. ECF No. 1-1 at 29.

---

[12] The record shows that Mr. Salazar did not appear at a DFEH hearing.

7

# III. STANDARD OF DECISION

Summary judgment is proper if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal citation and quotation omitted). A fact is material if it could affect the outcome of the suit under the governing substantive law; "irrelevant" or "unnecessary" factual disputes will not be counted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If the moving party would bear the burden of proof on an issue at trial, that party must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). In contrast, if the non-moving party bears the burden of proof on an issue, the moving party can prevail by "merely pointing out that there is an absence of evidence to support the non-moving party's case." *Id.* When the moving party meets its burden, the non-moving party must demonstrate that there are genuine disputes as to material facts by either:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c).

In ruling on a motion for summary judgment, a court does not make credibility determinations or weigh evidence. *See Anderson*, 477 U.S. at 255. Rather, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* Only admissible evidence may

8

be considered in deciding a motion for summary judgment. Fed. R. Civ. P. 56(c)(2). "Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." *Soremekun*, 509 F.3d at 984.

## IV. DISCUSSION

### A. Direct Discrimination Claims

#### 1. Exhaustion of Administrative Remedies

Exhaustion of administrative remedies is a jurisdictional prerequisite to bringing a FEHA claim in court. *See Okoli v. Lockheed Tech. Operations Co.*, 36 Cal. App. 4th 1607, 1612 (1995) (holding employee's failure to exhaust administrative remedies barred retaliation claim where employee failed to amend DFEH charge to include employer's retaliatory actions, and new claims were "neither like nor reasonably related to DFEH claim") (citing Cal. Gov't Code § 12960). Under California law, an employee must exhaust the administrative remedy under FEHA by filing an administrative complaint with the DFEH and obtaining the DFEH's notice of a right to sue before bringing a FEHA claim in court. *See Martin v. Lockheed Missiles & Space Co.*, 29 Cal. App. 4th 1718, 1724 (1994) (holding plaintiff failed to exhaust administrative remedies where FEHA complaint did not include sex discrimination and retaliation claims). "To exhaust his or her administrative remedies as to a particular act made unlawful by [FEHA], the claimant must specify that act in the administrative complaint, even if the complaint does specify other cognizable wrongful acts." *See id.* Under FEHA, "failure to exhaust an administrative remedy is a jurisdictional, not a procedural, defect,' and thus that failure to exhaust administrative remedies is a ground for a defense summary judgment." *Id.* (citing *Miller v. United Airlines, Inc.*, 174 Cal. App. 3d 878, 890 (1985)).

Here, Mr. Salazar filed a complaint with the DFEH on November 20, 2015 alleging only "Retaliation" under FEHA, basing his allegation of retaliation on "[a]ssociation with a member of a protected class," and his "appear[ance] at a hearing when [Salazar] complained about discrimination of a co-worker." ECF No. 20-15 at 5–8. Mr. Salazar does not allege direct discrimination in his FEHA

9

complaint.

Defendant points this out in its motion, arguing that Plaintiff's entire FEHA discrimination claim is subject to dismissal on exhaustion grounds. *See* ECF No. 19 at 22 ("Plaintiff did not exhaust his administrative remedy for FEHA discrimination on any basis (association with someone in a protected category, age, or disability))." Plaintiff does not respond directly to this assertion, focusing instead on his retaliation claim. *See generally* ECF No. 28. The Court agrees with Defendant that Plaintiff did not exhaust any form of direct discrimination claim, whether based on association with a person in a protected class, age, or disability.

Plaintiff does suggest, somewhat confusingly, that his age discrimination claim should be allowed to proceed because, "after plaintiff was interviewed by the DFEH, defendant started harassing plaintiff because of his age to get him to quit." ECF No. 28 at 10. Plaintiff suggests that an age discrimination claim should be allowed to proceed because such a claim is a "reasonable expansion" of the civil complaint, since it is "related to the retaliation." While Plaintiff is correct that a line of cases supports the proposition that a FEHA complaint may encompass any discrimination that is "like or reasonably related to" the allegations made the charge of discrimination," *Couveau v. Am. Airlines, Inc.*, 218 F.3d 1078, 1082 (9th Cir. 2000) (quoting *Okoli v. Lockheed Tech. Operations Co.*, 36 Cal. App. 4th 1607, 1614–17 (1995)), that rule is normally used to allow inclusion of acts of discrimination that occur after an administrative charge is filed. *Id*. *Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 636 (9th Cir. 2002) (extending Title VII jurisdiction over charges that "fell within the scope of the EEOC's actual investigation or an EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."). By way of example, under most circumstances, "a complaint alleging race discrimination is neither 'like or related to' nor likely to be discovered in a 'reasonable' investigation of a charge of sex discrimination." *Okoli*, 36 Cal. App. 4th at 1615. The Court is unaware of any authority that would support a finding that an investigation of Plaintiff's DFEH complaint—which focuses on retaliation and nowhere mentions Plaintiff's age or age discrimination—reasonably would have been

10

expected to uncover that Cargill also discriminated against Plaintiff on the basis of his age.

Notably, Plaintiff nowhere asserts that a claim of direct discrimination based upon his association with a protected person, namely Ms. Lee—a woman, should proceed on a theory that such a claim is "like or reasonably related to" the allegations made in the administrative charge of discrimination. Plaintiff instead appears to be focusing on prosecuting and proving his retaliation claim. The Court will not manufacture an argument for Plaintiff.

Accordingly, the Court GRANTS Defendant's motion for summary judgment as to the first cause of action (FEHA discrimination) for failure to exhaust.[13]

That said, no party argues that evidence related to comments any Cargill personnel may have made about Plaintiff's age are irrelevant to Plaintiff's retaliation claim and, more specifically, to Plaintiff's overall showing of adverse employment action.

**B.     Retaliation Under FEHA**

To establish a prima facie case of retaliation under FEHA, an employee must show: (1) he engaged in an activity protected by FEHA; (2) the employer subjected him to an adverse employment action; and (3) a causal link between the protected activity and the adverse employment action. *See Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005).

---

[13] Even if, *arguendo*, the entire FEHA discrimination claim was not subject to dismissal on exhaustion grounds, Plaintiff arguably could not maintain here a direct age discrimination claim because the First Amended Complaint does not allege a FEHA age discrimination claim. Instead, Mr. Salazar indicates that he unintentionally asserted a FEHA disability claim. Mr. Salazar clarified in his deposition and discovery responses that he is not seeking a FEHA disability claim. *See* Salazar Dep. 44:19–45:5; *Id.* ¶ 4, Ex. C at 6–8, 10. Mr. Salazar states in his opposition that "plaintiff has advised defendant that the use of the word 'disability' discrimination is a typographical error since the early stage of this case." ECF No. 28 at 10. But, Mr. Salazar never amended his complaint to include an age discrimination claim, nor can his First Amended Complaint reasonably be read to include any direct age discrimination allegations.

11

### 1. **Engagement in a Protected Activity**

The parties agree for purposes of this motion that Mr. Salazar's participation in the December 22, 2014 DFEH interview constitutes protected activity. ECF No. 19 at 26 n.5; ECF No. 28 at 7. Thus, the first element of FEHA retaliation is satisfied.

### 2. **Adverse Employment Action**

The Court has carefully reviewed the record and notes that this is an exceedingly close call. Resolving inferences in Plaintiff's favor at this stage, the Court finds a genuine issue of material fact exists on whether Mr. Salazar suffered an adverse employment action. An adverse employment action must materially affect the terms, conditions, or privileges of employment to be actionable. *See Yanowitz*, 36 Cal. 4th at 1052. The determination of an adverse employment action is not a "mathematically precise test." *Id.* at 1054. Courts should consider "the unique circumstances of the affected employee as well as the workplace context of the claim," including the legitimate interests of both the employer and employee. *See id.* at 1052, 1054. "Enforcing a requirement that each act separately constitute[s] an adverse employment action would subvert the purpose and intent of [FEHA]." *Id.* at 1055–56. "Minor or relatively trivial adverse actions or conduct by employers . . . from an objective perspective, are reasonably likely to do no more than anger or upset an employee cannot properly be viewed as materially affecting the terms, conditions, or privileges of employment and are not actionable." *Id.* at 1054–55. "[M]ere ostracism in the workplace is insufficient to establish an adverse employment decision." *Brooks v. City of San Mateo*, 229 F.3d 917, 929 (9th Cir. 2000).

In contrast, "adverse treatment that is reasonably likely to impair a reasonable employee's job performance or prospects for advancement or promotion falls within the reach of the antidiscrimination provisions of [FEHA]." *Yanowitz*, 36 Cal. 4th at 1054–55. "Adverse employment actions can include termination, demotion, failing to promote, denial of an available job, adverse job assignments, official discipline, and significant changes in compensation or benefits." *Ayala v. Frito Lay, Inc.*, 263 F. Supp. 3d 891, 905 (E.D. Cal. 2017) (finding sufficient allegations of adverse employment action in FEHA

discrimination case where plaintiff claimed negative work performance reports, denial of request to transfer work shifts, denial of long-term disability benefits, and termination).

In *Yanowitz*, the California Supreme Court held that an employee met her prima facie burden in establishing an adverse employment action where: (1) she received unwarranted negative performance evaluations after a long period as a highly rated employee; (2) the employer refused to allow the employee to respond to the unwarranted criticism; (3) she received months of humiliating, unwarranted public criticism; (4) the employer refused to provide necessary resources and assistance to the employee's staff; and (5) the supervisor's repeated solicitation of negative feedback from the plaintiff's staff. *Yanowitz*, 36 Cal. 4th at 1039, 1055, 1060. The employee also suffered implied threats of termination where a supervisor told the employee that "[i]t would be a shame to end an eighteen-year career this way" and her career would be "over" unless "there were immediate changes." *Id.* at 1038–39, 1060.

Additionally, the California Court of Appeal held that a genuine issue of material fact existed regarding whether an employee suffered an adverse employment action where the plaintiff was allegedly isolated, moved to a different office, verbally and physically attacked, rejected for promotion, subjected to reduced hours, and denied previously promised training. *Light v. Dep't of Parks & Recreation*, 14 Cal. App. 5th 75, 92–93 (2017). *But see Thomas*, 77 Cal. App. 4th at 511–12 (finding no adverse employment action where claims involved one-time events, including delayed overtime check, early job change, assignment of more duties than other employees, without facts evidencing substantial and detrimental effect on employment).

Mr. Salazar argues he suffered an adverse employment action at Cargill. This Court will only address the key arguments that impact its decision: Cargill allegedly threatened to fire Mr. Salazar for supporting Ms. Lee's gender harassment and discrimination claims. Salazar Dep. 210:20–211:24. Mr. Salazar contends that Mr. Romero allegedly told Mr. Salazar that a Cargill Vice President asked Mr. Romero "when he was going to fire" Mr. Salazar. Salazar Decl. ¶ 10. According to Ms. Lee, Mr.

Romero told Ms. Lee that he was upset with Mr. Salazar for "supporting Ms. Lee when he was interviewed by the DFEH" and that Mr. Salazar "never should have testified for you." Lee Decl. ¶ 16. Mr. Romero "took over" morning meetings (ECF No. 28 at 6; ECF No. 28-3 ¶ 9) and excluded Plaintiff from the weekly management meetings (Salazar Decl. ¶ 9; Lee Decl. ¶ 13). Mr. Romero "harassed John Salazar because of his age" and "threatened" to replace Mr. Salazar with a younger person.[14] For example, Mr. Salazar alleges that Mr. Romero repeatedly would state that he needed someone younger to run the floor and that Plaintiff was too old.[15] Salazar Dep. 13:6–12. Mr. Romero also overrode Mr. Salazar's request to fire an employee. ECF No. 28 at 6; ECF No. 28-4 ¶ 12.

Viewing each piece of evidence in a vacuum could lead the Court to find that Mr. Salazar did not suffer an adverse employment action. Taken altogether, as *Yanowitz* instructs, the evidence supports a finding of a triable issue of material fact. *See Yanowitz*, 36 Cal. 4th at 1055–56. Mr. Romero's alleged takeover of the morning meetings, exclusion of Mr. Salazar in the managers' meetings, overriding of

---

[14] While the Court dismissed Mr. Salazar's age discrimination claim for failure to exhaust administrative remedies, the Court considers the alleged comments about Mr. Salazar's age, along with other evidence, in its evaluation of the totality of circumstances surrounding the purported adverse employment actions. *See Yanowitz*, 36 Cal. 4th at 1055–56.

[15] Cargill objects on the grounds of double hearsay to Mr. Salazar's declaration stating that Mr. Romero told him that a Cargill Vice President asked Mr. Romero "when he was going to fire" Mr. Salazar. ECF No. ¶ 10. This is hearsay within hearsay. There is an exception, however, for a party opponent admission. Fed. R. Evid. 801(d)(2)(D). Here, Mr. Romero, a supervisor at Cargill, and the Cargill Vice President, allegedly made these statements at Cargill's Fresno plant, and they involve Mr. Salazar's employment. Therefore, the statements qualify as party opponent admissions. Cargill further objects on the grounds that Mr. Salazar does not have any personal knowledge regarding what the Cargill Vice President asked Mr. Romero. Of course he does not. That is why it is hearsay within hearsay. Critically, Mr. Salazar is only stating what he allegedly learned from Mr. Romero. Thus, he does not need to have personal knowledge regarding the Vice President's statements. Accordingly, Cargill's objections are OVERRULED.

Mr. Salazar's disciplinary decisions, purported threats to fire Mr. Salazar, and alleged statements to Ms. Lee about Mr. Salazar's participation in the DFEH interview, establish a genuine issue of material fact on whether Mr. Salazar suffered an adverse employment action. *See Yanowitz*, 36 Cal. 4th at 1051–52.

The record suggests that Cargill received several complaints about Mr. Salazar and Ms. Lee. ECF No. 31 ¶ 9. But, nothing in the record directly ties the prior complaints about Mr. Salazar and Ms. Lee to Mr. Romero's decision to override Mr. Salazar's request to terminate another employee. While the Court must consider the legitimate interests of both the employer and employee under *Yanowitz*, 36 Cal. 4th at 1054, the Court must resolve all reasonable inferences in the nonmoving party's favor at summary judgment. *See Anderson*, 477 U.S. at 255.

Viewing the evidence in a light most favorable to Plaintiff, the Court finds a genuine issue of material fact exists as to whether Mr. Salazar suffered an adverse employment action. *See id.* at 1055–56 ("[e]nforcing a requirement that each act separately constitute[s] an adverse employment action would subvert the purpose and intent of [FEHA]").

### 3. Causal Link Between the Protected Activity and the Adverse Employment Action

To establish causation, the plaintiff must show by a preponderance of the evidence that his engagement in the protected activity was one of the reasons for the adverse employment decision, and that but for such activity, the decision would not have been made. *See Kraus v. Presidio Trust Facilities Division/Residential Mgmt. Branch*, 704 F. Supp. 2d 859, 863 (N.D. Cal. 2010) (citing *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002)). "The causal link may be established by an inference derived from circumstances evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." *Jordan v. Clark*, 847 F.2d 1368, 1376 (9th Cir. 1988) (internal citations and quotations omitted). The timing of an adverse employment action can provide strong evidence of retaliation. *See Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987) (finding genuine issue of material fact on causation where adverse actions occurred within three months of protected

activity).

Mr. Salazar participated in the DFEH interview regarding Ms. Lee's claims on December 22, 2014. Salazar Decl. ¶ 6; Espinoza Decl. ¶ 7; Lee Decl. ¶ 7. Sometime after the DFEH interview, Mr. Salazar alleges he suffered various consequences culminating in adverse employment actions. Salazar Decl. ¶¶ 9–11. Mr. Salazar submitted his resignation letter on February 26, 2015. Salazar Decl. ¶ 11, Ex. 1. Assuming Mr. Salazar's allegations as true, Cargill's retaliatory acts would have occurred sometime between December 22, 2015 and February 26, 2015. Like in *Yartzoff*, where the Ninth Circuit held that genuine issues of material fact existed regarding causation where a plaintiff incurred adverse actions within three months of his protected activity, here, Mr. Salazar allegedly suffered adverse employment actions within two months of his DFEH interview. *See Yartzoff*, 809 F.2d at 1376. Thus, the temporal proximity between his DFEH interview and purported adverse employment actions creates a triable issue of material fact as to causation. It is disputed whether Mr. Romero knew that Mr. Salazar provided information supporting Ms. Lee's claims against Cargill to the DFEH. Romero Decl. ¶¶ 5, 7, 9–10. The record also suggests that a Cargill attorney and employee were present during Mr. Salazar's DFEH interview. Salazar Decl. ¶ 6. As such, this Court finds a genuine issue of material fact exists on whether there was a causal link between Mr. Salazar's protected activity and the adverse employment actions. Accordingly, Cargill's motion for summary judgment on Mr. Salazar's FEHA retaliation claim is DENIED.

### C. <u>Constructive Discharge</u>

While Cargill's various alleged acts may create a triable issue of fact as to whether Mr. Salazar suffered an adverse employment action, even viewing all the evidence in a light most favorable to Plaintiff, no reasonable jury could find that Mr. Salazar was constructively discharged. For constructive discharge, adverse working conditions must be unusually aggravated or amount to a continuous pattern before the situation is deemed intolerable. *See Turner v. Anheuser-Busch*, Inc., 7 Cal. 4th 1238, 1247 (1994) (holding illegal conduct in workplace, elapsed time, and negative performance evaluation did not

render employment conditions so intolerable to a reasonable employee sufficient for constructive discharge). An employee must plead and prove, by a preponderance of the evidence, that the employer either intentionally created or knowingly permitted working conditions that were so intolerable or aggravated at the time of employee's resignation that a reasonable employer would realize that a reasonable person in the employee's position would be compelled to resign. *See id.* at 1250–51, 1254–55. Under this standard, those who effectively represent the employer, including an employer's officers, directors, managing agents, or supervisory employees, must have the requisite knowledge or intent. *See id.* at 1251.

An employee cannot simply quit and sue, claiming that he was constructively discharged. *See King v. AC & R Advertising*, 65 F.3d 764, 767 (9th Cir. 1995) (holding an employee was not constructively discharged despite status change to at-will employee, reduced managerial responsibilities, and restructured compensation package). Conditions giving rise to the resignation must be sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his employer. *See Turner*, 7 Cal. 4th at 1246, 1253–55 (rejecting plaintiff's "attempt to weave unrelated and disjointed events together into an insidious pattern" and finding no constructive discharge). Generally, single, trivial or isolated acts of misconduct are insufficient to support a constructive discharge claim. *See id.* at 1247 (internal citations omitted). A poor performance rating or a demotion, even when accompanied by reduced pay, does not by itself trigger constructive discharge. *See id.* at 1255 (quoting *Cole v. Fair Oaks Fire Protection Dist.*, 43 Cal. 3d 148, 160 (1987) ("In order to properly manage its business, every employer must on occasion review, criticize, demote, transfer, and discipline employees")); *see also King*, 65 F.3d at 767–69.

Here, Mr. Salazar resigned from Cargill on February 26, 2015. Salazar Decl. ¶ 11, Ex. 1. Mr. Salazar testified that he thought his "days were counted, so [he] was forced to resign" when Cargill's Vice President purportedly asked Mr. Romero when he was going to fire Mr. Salazar. Salazar Dep. 66:1–6. Mr. Salazar did not receive a negative performance evaluation, which even then, would not

1  amount to constructive discharge. *Id.* at 66:7–14. Mr. Salazar did not receive less pay or a demotion

2  (*id.* at 66:15–18), which are likewise insufficient for constructive discharge. *See Turner*, 7 Cal. 4th at

3  1247 ("a poor performance rating or a demotion, even when accompanied by reduction in pay, does not

4  by itself trigger a constructive discharge"). While Mr. Salazar may have had reduced managerial duties,

5  the *King* court determined that reduced managerial duties were insufficient to establish constructive

6  discharge. *See King*, 65 F.3d at 768–69. Nothing in the parties' evidence suggests Mr. Salazar suffered

7  intolerable or aggravated working conditions that would cause a reasonable employee to quit.

8  Therefore, this Court finds no triable issue of material fact regarding whether Mr. Salazar was

9  constructively discharged. Accordingly, constructive discharge cannot serve as the foundation for Mr.

10 Salazar's discrimination, retaliation, and wrongful termination in violation of public policy claims.

**D.      Wrongful Termination in Violation of Public Policy**

An employer generally does not have the right to terminate employment for a reason that contravenes fundamental public policy as expressed in a constitutional or statutory provision. *See Turner*, 7 Cal. 4th at 1252. Here, Mr. Salazar bases his wrongful termination claim on California Labor Code section 1102.5, which prohibits employers from retaliating against employees for engaging in protected conduct. *See* Cal. Lab. Code § 1102.5. Because the Court finds that summary judgment is not proper on Mr. Salazar's FEHA retaliation claim, summary judgment on his derivative claim is likewise inappropriate.

**E.      Punitive Damages**

Cargill argues that the Court should grant summary judgment on Mr. Salazar's request for punitive damages. Punitive damages are recoverable for FEHA violations. *See Yeager v. Corrections Corp. of Am.*, 944 F. Supp. 2d 913, 931 (E.D. Cal. 2013). A claim for punitive damages requires "clear and convincing evidence that the defendant has been guilty of oppression, fraud or malice." Cal. Civ. Code § 3294. "This higher clear and convincing evidentiary standard applies at every stage of the litigation process, including summary adjudication." *Adams v. Allstate Ins. Co.*, 187 F. Supp. 2d 1219,

1231 (C.D. Cal. 2002).

Cargill moves for summary judgment on the basis that Mr. Salazar cannot sustain his prayer for punitive damages. Mr. Salazar does not respond to Cargill's argument regarding punitive damages. Mr. Salazar's failure to address how any of Cargill's actions constitute "oppression, fraud or malice" is fatal to his punitive damages claim.

Even assuming that Mr. Salazar established clear and convincing evidence to support punitive damages, no reasonable jury could find that Mr. Romero—against whom Mr. Salazar bases his claims—had broad authority over Cargill's formal policies. *See Yeager*, 944 F. Supp. 2d at 931–32 (evidence must demonstrate an individual was acting as managing agent of corporation with substantial discretionary authority over decisions ultimately determining corporate policy). Accordingly, the Court grants summary judgment as to Mr. Salazar's punitive damages claims.

## V. CONCLUSION AND ORDER

Cargill's motion for summary judgment is GRANTED in part, and DENIED in part. Cargill's motion is GRANTED as to Mr. Salazar's FEHA discrimination claims and request for punitive damages. Cargill's motion is DENIED as to Mr. Salazar's FEHA retaliation claim and claim for wrongful termination in violation of public policy.

IT IS SO ORDERED.

Dated: __August 19, 2019__  　　　　　／s/ Lawrence J. O'Neill　　　
　　　　　　　　　　　　　　　　　　UNITED STATES CHIEF DISTRICT JUDGE